2011 Ark. App. 761

**Robbin M. GOWEN, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–635.**

Court of Appeals of Arkansas.

Dec. 7, 2011.

Jonathan Tipton Lane, Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., for appellee.

DOUG MARTIN, Judge.

Appellant Robbin Gowen entered a plea of guilty on March 26, 2010, to one count of being a felon in possession of a firearm and one count of possession of drug paraphernalia. At that time, the Lonoke County Circuit Court sentenced her to sixty months' probation on the felon-in-possession count and twelve months' probation on the paraphernalia charge. In addition, Gowen was ordered to pay $1500 in fines and $150 in court costs.

The State filed a petition to revoke Gowen's probation on July 30, 2010, alleging

that Gowen had failed to report to her probation officer as required; committed the crimes of possession of drug paraphernalia and possession of drug paraphernalia with intent to manufacture methamphetamine; associated with a known felon; and failed to pay her fines, court costs, and supervision fees. On August 23, 2010, the State filed a felony information against Gowen, charging her with possession of drug paraphernalia with the intent to manufacture methamphetamine and with maintaining a drug premises.

Following a bench trial during which the circuit court considered both the new criminal charges and the State's revocation petition, the court found Gowen not guilty of the drug-premises charge but convicted her of possession of drug paraphernalia with intent to manufacture, for which the court sentenced Gowen to forty-two months in the Arkansas Department of Correction. In addition, the court revoked Gowen's probation based on the new conviction, sentencing her to seventy-two months in prison.

Gowen filed timely notices of appeal from both the new conviction and the revocation. On appeal, she argues that the evidence was insufficient to support her conviction for possession of paraphernalia with intent to manufacture, and she contends that the evidence was insufficient to support the revocation of her probation. We find no error and affirm.

In her first argument on appeal, Gowen argues that her conviction for possession of drug paraphernalia with intent to manufacture methamphetamine is not supported by substantial evidence because the State failed to establish that she had exclusive possession of the paraphernalia. Our standard of review for determining the sufficiency of the evidence is well set-

tled. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Holt v. State,* 2009 Ark. 482, 348 S.W.3d 562; *Walley v. State,* 353 Ark. 586, 112 S.W.3d 349 (2003). Substantial evidence is that "which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture." *Holt, supra.* With regard to circumstantial evidence, such evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* When we review a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the State, and only evidence supporting the verdict will be considered. *Id.* Furthermore, a finder of fact need not lay aside its common sense in evaluating the ordinary affairs of life, and it may infer a defendant's guilt from improbable explanations of incriminating conduct. *Id.*

At trial, probation officer Thomas McBroom[1] testified that, on June 9, 2010, he received information that led him and probation officer John Rooney to travel to Gowen's residence. Once there, McBroom observed a teenage boy in the driveway next to the home. A gate blocked the driveway, so McBroom honked his car's horn to attempt to get someone to come open the gate. When no one came out, he and Rooney climbed over the fence and went to the door of the home. McBroom and Rooney knocked on the door, trying to alert anyone inside to their presence, but, although McBroom could hear noises inside the home, no one would come to the door. McBroom and Rooney continued to knock on the door for thirty to forty-five

1. Brad Coyle was Gowen's regular probation officer, but he was out of the office that day.

minutes; while doing so, they walked around the property, and McBroom noticed what appeared to be a burn barrel in the back yard that contained what appeared to McBroom to be components for a meth lab.

Rooney called Officer Kevin Trigg of the probation office for assistance. When Trigg arrived, he also observed the barrel and then contacted Lieutenant James Kulesa of the drug task force. After Kulesa arrived, Rooney and McBroom continued knocking on the door, but still no one responded. At that point, Kulesa called the prosecuting attorney's office to determine whether they had probable cause to enter the house.

Upon being informed that they had probable cause, the officers again knocked on the door and advised the occupants of the house that they needed to respond or the officers would make a forced entry. Once more, no one responded, so the officers entered the home. Rooney went to one end of the house, where he found Gowen and Clayton Ainsworth, who was also on probation, in a bedroom. Rooney brought Gowen and Ainsworth to the kitchen, and Kulesa then obtained consent from Gowen to search the house.

Rooney searched the residence, and, in the master bedroom, he found a homemade funnel, some plastic tubing, and some other paraphernalia next to the bed. Trigg found coffee filters in a plastic bag underneath the bedroom dresser and two cans of camp fuel in a black bag in the bedroom. Trigg also found a smoking device in the bottom drawer of the dresser, as well as tubing, syringes, gloves, a metal spoon with residue, and coffee filters. Trigg also recalled seeing a pill crusher near the bed.

Kulesa verbally advised Gowen of her *Miranda* rights, and Gowen told him that she did not know anything about a bottle found in the burn barrel. Gowen also told Kulesa that Ainsworth had been staying with her for a couple of weeks. Kulesa asked Gowen when was the last time she used methamphetamine, and she said, "about two or three days ago."

Kulesa also found a glass smoking device in a jewelry box in the bedroom where Gowen had been found. Kulesa retrieved the burned bottles from the burn barrel along with some blister packages. In addition, Kulesa found a bag of ammonia nitrate on the side of the bed, along with a pill grinder and some stained tubing. Based on his experience in investigating hundreds of meth labs, Kulesa identified the items discovered in the bedroom and the burn barrel as materials utilized to manufacture methamphetamine.

Leonard Brickell, a pharmacist at the Wal–Mart in Cabot, testified that his pharmacy's computer records showed that Gowen purchased packages of pseudoephedrine totaling 2.4 grams on three occasions between May 20, 2007, and July 3, 2010.

Dan Hedges, a forensic chemist with the Arkansas State Crime Laboratory, testified that he tested the materials recovered from Gowen's home, including a plastic sampling bottle that had a glass vial containing a red-and-white beaded material and dark-gray metallic pieces in it; those materials were positive for methamphetamine and indicative of ephedrine/pseudoephedrine, as well as sodium nitrate and ammonia. This mixture, Hedges said, was the reaction mixture for manufacturing methamphetamine. The metal spoon found at Gowen's house tested positive for methamphetamine and oxycodone.

Gowen testified on her own behalf, denying that she had ever taken part in manufacturing methamphetamine. Gowen explained that she hired Ainsworth to clean

up some tornado damage around her home, and she claimed that she had no knowledge of the things that were found in her residence. Gowen also denied ever providing Ainsworth with pseudoephedrine or ephedrine, claiming that she had purchased them as medication because she takes other medications that cause her to itch.

On cross-examination, Gowen acknowledged that she had tested positive for methamphetamine on one of her drug tests, but she denied using methamphetamine and suggested that it was because "those kids" might have drugged her by putting meth in her coffee. Gowen also claimed that she did not answer the door when her probation officer was knocking because she could not hear the knocking over the air conditioner; in addition, she said that Ainsworth told her that it was her ex-boyfriend at the door. Gowen further asserted that, although the items of paraphernalia were found in the bedroom, she was not staying in the bedroom but was sleeping on a couch in the living room.

On appeal, Gowen argues that the evidence was insufficient to "establish that she had exclusive possession" of the paraphernalia. Neither exclusive nor actual physical possession is necessary, however, to establish the offense charged. A person is guilty of possession of drug paraphernalia with intent to manufacture if he or she uses, or possesses with intent to use, drug paraphernalia to "plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance." Ark.Code Ann. § 5–64–403(c) (Repl.2005). The Arkansas Criminal Code defines possession as "exercis[ing] actual dominion, control, or management over a tangible object." Ark.Code Ann. § 5–1–102(15) (Repl.2006).

Our supreme court has held that the State need not prove that the accused physically possessed the contraband in order to sustain a conviction for possession of a controlled substance if the location of the contraband was such that it could be said to be under the dominion and control of the accused, that is, constructively possessed. *Cantrell v. State*, 2009 Ark. 456, 343 S.W.3d 591; *Walley v. State*, 353 Ark. 586, 112 S.W.3d 349 (2003). Though constructive possession can be inferred when the accused has joint control over the contraband with another, an additional factor is necessary to link the accused to the contraband in joint-occupancy situations. *Holt v. State*, 2009 Ark. 482, 348 S.W.3d 562 (citing *Ravellette v. State*, 264 Ark. 344, 571 S.W.2d 433 (1978)). "It cannot be inferred that one in non-exclusive possession of premises knew of the presence of drugs and had joint control of them unless there were other factors from which the jury can reasonably infer the accused had joint possession and control." *Walley*, 353 Ark. at 596, 112 S.W.3d at 354. Our supreme court has stated that an additional factor to consider in determining whether a defendant was in constructive possession was the proximity of the defendant to the contraband. *Morgan v. State*, 2009 Ark. 257, 308 S.W.3d 147.

Indicators of possession are ownership of the property where the contraband is found, *see Abshure v. State*, 79 Ark.App. 317, 87 S.W.3d 822 (2002), and an accused's suspicious behavior coupled with proximity to the contraband. *See Heard v. State*, 316 Ark. 731, 876 S.W.2d 231 (1994). Here, the drug paraphernalia was found primarily in Gowen's bedroom, where she was also discovered by the investigating officers who had been attempting to get her to open the door for thirty to forty-five

minutes. Gowen admitted to Kulesa that she had used methamphetamine within the last two or three days. Although Gowen claimed that someone must have drugged her, the trier of fact was free to disbelieve her; moreover, a defendant's guilt may be inferred from improbable explanations of incriminating conduct. $\vert_8$See *Draper v. State*, 2010 Ark. App. 628, 378 S.W.3d 191. On these facts, the circuit court did not err in denying Gowen's motion to dismiss, and substantial evidence supported Gowen's conviction for possession of drug paraphernalia with intent to manufacture.

■ In her second point on appeal, Gowen argues that the revocation of her probation was in error because the trial court "improperly considered evidence that was not contained in the petition to revoke probation, and the State failed to show that Gowen willfully failed to pay her supervision fees or knew that Clayton Ainsworth was a felon." A sentence of probation may be revoked when a court finds by a preponderance of the evidence that the defendant has inexcusably failed to comply with a condition of his probation or suspended sentence. *Jenkins v. State*, 2011 Ark. App. 248, 2011 WL 1166855. The State bears the burden of proof but need only prove that the defendant committed one violation of the conditions.

As there was sufficient evidence to support Gowen's conviction for possession of drug paraphernalia with intent to manufacture, there was clearly sufficient evidence to support the revocation of her probation, as one of the conditions of probation was that Gowen "must not commit a criminal offense punishable by imprisonment."[2] Nonetheless, Gowen argues that, in granting the State's petition to revoke, the cir-

cuit court stated that it had "found Gowen guilty of possession of drug paraphernalia with intent to manufacture ... as well as other evidence that's been presented to the court." Gowen maintains that what this "other $\vert_9$evidence" consisted of was not expressly stated by the court, and the revocation of her probation should be reversed because it was error to consider this "other" evidence. Gowen failed to object to or seek clarification of the trial court's ruling and thus waived any argument thereon. *Cheshire v. State*, 80 Ark.App. 327, 330, 95 S.W.3d 820, 823 (2003) ("While it is true that appellant's right to due process required that he be given notice of the conditions of probation he was alleged to have violated, it is also true that the denial of any right, even a constitutional one, must be objected to at trial to be preserved for appeal.") (citations omitted). Accordingly, the trial court's decision to revoke Gowen's probation is affirmed.

Affirmed.

HART and GLOVER, JJ., agree.

---

2. For this reason, we do not address Gowen's arguments that the trial court erred by considering evidence that she had tested positive for methamphetamine, finding that she will-

fully failed to pay her fines, and finding that she had knowingly associated with a known felon.