2012 Ark. App. 425

**Jomey Alexander ROBELO, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–1249.**

Court of Appeals of Arkansas.

June 27, 2012.

William O. James, Jr., James Law Firm, Little Rock, for Appellant.

Dustin McDaniel, Atty Gen., Laura Shue, Asst. Atty. Gen., for Appellee.

DOUG MARTIN, Judge.

A Saline County jury found appellant Jomey Robelo guilty of possession of methamphetamine with intent to deliver, possession of cocaine with intent to deliver, and maintaining a drug premises. Robelo was sentenced to an aggregate term of thirty years' imprisonment. On appeal, Robelo contends that there was no substantial evidence to support his convictions. We disagree and affirm.

Officer Chris Holmes with the narcotics unit of the Pulaski County Sheriff's Office testified that, on September 10, 2009, he met with a confidential informant. After searching the informant's person and vehicle for money and contraband, Holmes provided the informant with $1,500 to purchase drugs from Robelo. Holmes then met with officers from the Benton Narcotics Unit and informed them that there would be "a buy" at Home Depot in Benton. The informant met two Hispanic males in the parking lot at Home Depot. Robelo was driving a gray Hyundai Elantra, which Holmes recognized from previous surveillance operations, while the other, unidentified male, who sat in the front passenger's seat. Robelo, who was wearing a red shirt, got out of the vehicle and went inside Home Depot, while the informant got into the back seat of Robelo's vehicle. When Robelo returned to the vehicle, the informant emerged from Robelo's vehicle and got back into his own vehicle. Officers then followed Robelo, who led the informant to an apartment complex located at 301 South Border Street in Benton. Robelo and the informant parked in front of apartment A, but Holmes did not follow them into the parking lot because there were many other Hispanics outside the apartment complex and he did not want to be identified and "have the whole operation blown." Instead, Holmes pulled to the side of the apartment complex. Holmes later saw the informant as he exited Robelo's apartment, got into his vehicle, and left the area. Officers followed the informant, who pulled over and provided the officers with an ounce of methamphetamine, which Holmes stated was consistent with the amount of "buy money" the informant was given prior to the transaction. At trial, upon questioning by defense counsel, Holmes testified that the informant did not testify because he was afraid of Robelo.

Later in the evening of September 10, 2009, Eli Fowlkes, a patrolman with the Benton Police Department, testified that he was instructed by his superiors to be on the lookout for the Hyundai Elantra. Fowlkes soon identified the car and observed that it crossed the center line twice and entered a turn lane without using the left turn signal. Fowlkes initiated what he characterized as a DWI stop. Robelo, the driver, provided Fowlkes with a Honduras license identifying him as "Jomy Robelo." Robelo told Fowlkes that he lived at the apartment complex on South Border Street and was on his way to work.

A video of the traffic stop was played for the jury. Holmes was then called back to the stand and identified Robelo as the driver of the vehicle he saw earlier at Home Depot and noted that Robelo was wearing the same red shirt during the traffic stop.

Marco Medina, an investigator in the narcotics unit at the Pulaski County Sheriff's Office, testified that he was involved with the drug-buy operation with Holmes on September 10, 2009, which began at Home Depot and ended at the apartment complex on South Border Street. Medina further testified that he was also present on September 15, 2009, when a search warrant was executed at Robelo's apartment by the Benton Police Department and a SWAT team. Inside apartment A, Medina found a military-style "butt pack" behind a night stand in the master bedroom. Inside the pack, which could be attached to a belt, Medina discovered a cellophane container, which held eleven baggies that contained cocaine and methamphetamine. Medina testified that, in his experience, separate baggies indicated that the drugs were for individual sale.

Investigator Ronald Davidson with the criminal investigations division at the Benton Police Department testified that he entered apartment A with a battering ram and found Robelo; his girlfriend, Rosibel Gaitan; and Robelo's child in the den. In the apartment's only bathroom, Davidson discovered a nail gun underneath the sink and a set of Allen wrenches sitting on top of the vanity. Davidson testified that he thought the bathroom vanity was an odd place to store a nail gun and observed that one of the wrenches had "wear" on it and matched the bolts on the nail gun. Davidson removed a panel on the nail gun using the wrench and found a clear plastic baggie containing methamphetamine. In the master bedroom, Davidson found another nail gun containing methamphetamine. In a shoe holder draped over the master-bedroom door, Davidson found two cell phones and seven one-hundred dollar bills inside shoes.

Lieutenant Mike Treasitti with the special investigations unit of the Benton Police Department testified that he documented items seized during the search of apartment A. Treasitti testified that he found a piece of mail in a cabinet above the refrigerator addressed to Robelo. In the master bedroom, in the top drawer of a night stand, Treasitti found a bank statement addressed to Robelo at "301 S Border St Apt A." Another detective found a wallet in the laundry room containing identification for Robelo. Also, inside a closet in the southeast bedroom, Treasitti found a plastic canister containing small plastic baggies, which he testified are often used for packaging narcotics. Treasitti further testified that, in 2007, he had encountered Robelo at apartment A in response to a custody dispute between Robelo and the mother of his child.

Sergeant Terry Fuller with the special investigations unit at the Benton Police Department testified that a confiscation report is filed following a search and seizure. The person whose property was seized must sign his name and print his address on the form. Robelo signed the report and wrote that his address was 301 South Border Street, apartment A, in Benton. Fuller also testified that he measured the distance between Robelo's apartment and several drug-free zones in the area. Fuller testified that the distance between apartment A and Angie Grant Elementary was 143 feet; Tyndall Park was 145 feet; and Bethel Missionary Baptist Church was 513 feet.

Nick Dawson, the Assistant Chief of Forensic Chemistry with the Arkansas State Crime Lab, testified that the substance associated with the offense committed on September 10, 2009, was twenty-four grams of a mixture of methamphetamine and dimethyl sulfone. The substances seized on September 15, 2009, were examined separately and identified as four grams of cocaine hydrochloride mixed with levamisole; forty-eight grams of dimethyl sulfone; eleven grams of methamphetamine mixed with dimethyl sulfone; and 103 grams of methamphetamine mixed with dimethyl sulfone. Dawson testified that dimethyl sulfone is typically used as a cutting agent to dilute the drugs so that they may be sold for more money.

Robelo moved for a directed verdict, arguing that there was insufficient evidence that he exercised care, control, and management over the drugs in his apartment and that there was no proof that he knew there were drugs in the apartment. On appeal, Robelo argues that the trial court erred in denying his motions for directed verdict as to all three convictions.

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Walley v. State*, 353 Ark. 586, 112 S.W.3d 349 (2003). The test for determin-

ing the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* With regard to circumstantial evidence, such evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Saul v. State,* 365 Ark. 77, 225 S.W.3d 373 (2006). When we review a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the State, and only evidence supporting the verdict will be considered. *Walley, supra.*

■ As a preliminary matter, a directed-verdict motion requires that the movant inform the trial court of the specific basis on which the motion is made. *Campbell v. State,* 319 Ark. 332, 891 S.W.2d 55 (1995); Ark. R.Crim. P. 33.1(a) (2011). "A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency, such as insufficient proof on the elements of the offense." Ark. R.Crim. P. 33.1(c). Robelo's motion for directed verdict pertained only to the sufficiency of the evidence to support a finding that he possessed the cocaine and methamphetamine seized from his apartment. Robelo did not argue at trial that there was insufficient evidence of the intent-to-deliver element of those offenses. Therefore, even had Robelo challenged the sufficiency of the evidence as to that element on appeal, this court would not address it because it is procedurally barred. *See, e.g., Abshure v. State,* 79 Ark.App. 317, 87 S.W.3d 822 (2002). Our review is limited to whether there was substantial evidence to support the jury's conclusion that Robelo possessed the controlled substances at issue.

Prior to its repeal, Arkansas Code Annotated section 5–64–401 (Supp.2009) provided that it is unlawful for any person to possess with intent to deliver a controlled substance. Ark.Code Ann. § 5–64–401(a).[1] Any person who violates this subsection with respect to a controlled substance classified in Schedule I or Schedule II that is a narcotic drug or methamphetamine, and by aggregate weight, including an adulterant or diluent, is twenty-eight grams or more but less than 200 grams, is guilty of a Class Y felony. Ark.Code Ann. § 5–64–401(a)(1)(B)(i).

■ The State need not prove that the accused physically possessed the contraband in order to sustain a conviction for possession of a controlled substance if the location of the contraband was such that it could be said to be under the dominion and control of the accused, i.e., constructively possessed. *Walley, supra.* In order to prove constructive possession, the State must establish (1) that the accused exercised care, control, and management over the contraband, and (2) that the accused knew the matter possessed was contraband. *Id.* Constructive possession can be implied when the controlled substance is in the joint control of the accused and another. *Id.* Joint occupancy, however, is not sufficient in itself to establish possession or joint possession. *Id.* An additional factor is necessary to link the accused to the contraband in joint-occupancy situations. *Holt v. State,* 2009 Ark. 482, 348 S.W.3d 562.

Robelo argues that there was no evidence showing who signed the lease on apartment A and that police officers found evidence tending to connect at least eight other individuals to the apartment. Ro-

---

1. This section was repealed by Acts 2011, No. 570, § 33.

belo argues that the only other factor potentially linking him to the contraband was the "possible delivery" of drugs to the informant five days prior to the search. Robelo argues, however, that there is no evidence that a drug transaction took place in the vehicle at Home Depot; the informant followed him to an apartment complex where there were several other individuals around; there was no evidence that Robelo discussed a drug transaction with the informant; and there was no evidence that Robelo was aware of any drug transaction. Robelo points out that the informant did not testify and that neither of the officers was able to see any transaction that took place inside the apartment.

█ The jury could reasonably conclude that Robelo lived at apartment A on South Border Street. Robelo lived at apartment A in 2007 when Treasitti was called to the residence regarding a custody dispute. Robelo led a confidential informant from the parking lot of Home Depot to apartment A for the purpose of selling drugs. During a traffic stop conducted only hours after the drug transaction at apartment A, Robelo told a police officer that he lived in an apartment on South Border Street. Further, Robelo was present when officers executed a search warrant on apartment A, and he subsequently listed apartment A on South Border Street as his address on the confiscation report.

Moreover, evidence seized at the time of the search further connected Robelo to apartment A. Officers found a piece of mail addressed to Robelo in the kitchen, and Robelo's wallet was discovered in the laundry room. A bank statement addressed to Robelo was found in a drawer of the night stand in the master bedroom where a significant amount of cocaine and methamphetamine was found.

The drug transaction that occurred at apartment A only five days prior to the search was an additional factor linking Robelo to the controlled substances in apartment A. Officers testified that they observed Robelo at Home Depot with the confidential informant and saw Robelo lead the informant to the apartment complex on South Border Street. The officers maintained surveillance at the apartment complex and saw the informant emerge from an apartment and return to his vehicle. Officers testified that they followed the informant, who subsequently relinquished an ounce of methamphetamine that was not found on the informant's person or in his vehicle earlier, and the informant had none of the $1,500 provided by police to purchase the controlled substance, which was consistent with the current street value of methamphetamine. Viewing this evidence in the light most favorable to the State, we hold that there was substantial evidence from which the jury could conclude that Robelo constructively possessed the controlled substances.

█ Next, Robelo argues that there was insufficient evidence to support his conviction for maintaining a drug premises. It is unlawful for any person knowingly to keep or maintain any dwelling that is resorted to by a person for the purpose of using or obtaining a controlled substance or that is used for keeping a controlled substance. Ark.Code Ann. § 5–64–402(a)(2) (Supp. 2009). A violation of this section is a Class B felony if the violation is committed on or within 1,000 feet of the real property of a certified drug-free zone, which includes a city or state park, a public or private elementary or secondary school, and a church. Ark.Code Ann. § 5–64–402(b), (c)(1)(A), (B), (H).

Robelo argues that there was no testimony that he had knowledge of any drugs in the apartment and that the mere existence of drugs does not necessitate his knowledge of them. Robelo contends that

there was no evidence that he maintained the apartment and no evidence of a lease or bills in his name.

The informant met with Robelo at Home Depot for the purpose of buying drugs, and Robelo led the informant to apartment A, where the informant purchased an ounce of methamphetamine for $1,500. Only five days after this drug transaction, officers seized a large amount of drugs, including cocaine and methamphetamine, from apartment A. Moreover, Fuller testified that there were three drug-free zones within 1,000 feet of Robelo's apartment. Viewing the evidence in the light most favorable to the State, there was substantial evidence from which the jury could reasonably conclude that Robelo knowingly maintained a drug premises.

Affirmed.

HART and GLADWIN, JJ., agree.