J.D. WESTBROOK *v.* STATE of Arkansas

CR 85-59                                          691 S.W.2d 123

Supreme Court of Arkansas
Opinion delivered June 10, 1985
[Rehearing denied July 15, 1985.*]

---

* Purtle, J., would grant rehearing. Dudley, J., not participating.

*Fulkerson & Todd, P.A.*, by: *Andrew Fulkerson*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

GEORGE ROSE SMITH, Justice. The appellant Westbrook was found guilty of possession of marihuana with intent to deliver and was sentenced to a term of four years and a $10,000 fine. For reversal he questions the sufficiency of the evidence and the court's rulings upon two other matters. The case was transferred to us by the Court of Appeals as presenting an issue of statutory construction. Rule 29(1)(c).

■ First, the sufficiency of the evidence. In considering this point we view the evidence in the light most favorable to the jury's verdict and do not weigh it against other conflicting proof favorable to the accused. When the testimony is so considered, this verdict is supported by substantial evidence.

Westbrook owned his home and shared its occupancy with Jim Vick. The two men each had a bedroom, with the other areas being jointly occupied. Vick signed the affidavit for a search warrant that led to a search of the house by police officers. They found a total of 9.1 ounces of marihuana in the kitchen area, and none elsewhere. The marihuana was in various containers in a china cabinet. Possession of more than an ounce of marihuana creates a presumption of intent to deliver. Ark. Stat. Ann. § 82-2617(d) (Supp. 1983).

■ The appellant relies upon *Ravellette v. State*, 264 Ark. 344, 571 S.W. 2d 433 (1978), and like cases, for the rule that where there is joint occupancy of the premises there must be some factor in addition to the joint control to link the accused with the controlled substance. In *Ravellette* there was no such evidence. There the codefendant admitted that the marihuana was his and exonerated the appellant of any knowledge of its presence or

control. Here Vick, the joint occupant, was not available to testify at the trial.

■ In this case there were several facts connecting Westbrook with the marihuana. He owned the house and had the superior right to its control. When the officers entered to make the search he was alone. In the area where he was sitting there was a glass that contained burned marihuana residue. The glass was so warm to the touch as to indicate that the marihuana had been smoked or burned in it. In the kitchen there were several items of drug paraphernalia. In Westbrook's bedroom were a magazine featuring marihuana paraphernalia and another magazine entitled "Marijuana Growers Guide." In the bathroom was a kit containing two partially burned marihuana cigarettes. While an officer was searching the bathroom Westbrook came in, picked up a jewelry box, and started out. When the officer retrieved the box it was found to contain $3,700 wrapped in three brown paper bags. Upon being taken into custody Westbrook asked: "I would just like to know which whore in town turned me in." All this evidence is amply sufficient to satisfy the *Ravellette* requirement.

Second, it is argued that a juror, Sherry Long, gave misleading answers to questions put to her on voir dire. Those proceedings were not recorded. After the trial the interrogation of Juror Long was reconstructed by counsel in connection with a motion for new trial. Only two questions and answers were included in the reconstruction. The first was during the voir dire of the jury panel as a whole:

> Judge Brown: Do any of you know, have any acquaintanceship or relationship by blood or marriage to any of the following witnesses, whose names are . . . Andy Foster. . .?

> Sherry Long: I know Andy Foster, but only because he is the County Sheriff.

During the questioning of individual jurors defense counsel asked one question of Ms. Long:

> Mr. Fulkerson: Mrs. Long, I believe that you said you knew Andy Foster but only because he is the County Sheriff; is that right?

Sherry Long: Yes, I work for Lee Gatlin at the Paragould Collection Bureau and we deliver papers to the Sheriff's office. That's how I know Sheriff Foster.

At the hearing on the motion for new trial the defendant's sister-in-law testified that she saw a political ad for the sheriff's re-election, signed by Sherry Long. The witness telephoned Ms. Long at home, learned that she had run the ad, and "I asked her if she was accepting political contributions, and she said: 'Well, yes.' " The defense had subpoena'd Ms. Long for the hearing, but the trial judge refused to allow her to be questioned. There was no proffer of what she might have testified, only a request to question her at the hearing.

■ No reversible error is shown. To begin with, the juror's answers are not shown to have been untrue or evasive. She was asked about her "acquaintanceship" with Foster and replied that she knew him only as sheriff. There is no proof to the contrary. Ms. Long, although having delivered papers to his office for service, may have never even met the man and may have urged his re-election on the basis of the efficiency of his office. The defendant had the burden of proof at the hearing, but the proof is just not there. Moreover, although the sheriff had been listed as a witness, he did not testify at the trial. It is argued that some of his deputies did testify, but the assumption that Ms. Long may have been readily inclined to believe their testimony is hollow. The credibility of the State's witnesses was not even challenged, the defense being not that the State's testimony was false but that Westbrook had no connection with the marihuana found in his home.

■■ On this point counsel also argue that "there is absolutely no foundation" for the court's ruling that Sherry Long could not be questioned and that "there are no decisions" saying jurors cannot be questioned about whether they withheld information on voir dire. Perhaps so, but on precisely the same premise there was no reason why defense counsel could not have questioned Ms. Long before the hearing and proffered whatever favorable testimony was elicited. That was not done, nor is it indicated that Ms. Long had refused to be interviewed, so that the court's assistance had to be invoked. The rule that one who seeks a new trial must make a showing of diligence is too familiar to need supporting authority. We cannot reverse the trial court's decision

and grant a new trial without any showing that an interrogation of the juror would have disclosed testimony impeaching her candor on voir dire.

Third, it is argued that the governing statute fails to classify the offense in question as either a felony or a misdemeanor; so it must be treated as a misdemeanor. That objection, however, was not raised below, and we have held that this point cannot be raised for the first time on appeal. *Toland* v. *State*, 285 Ark. 415, 688 S.W. 2d 718 (1985). It is also stated by counsel that in any event Westbrook should be allowed to petition the trial court for postconviction relief under Rule 37. That rule requires that the petitioner be in custody and that the petition be verified by the petitioner. Neither requirement is shown, nor would we in any case grant such a request for permission to proceed before our own decision has become final.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. My first disagreement is with the third point in the majority opinion where the majority refuses to construe Ark. Stat. Ann. § 82-2617 (a)(1)(iv) (Supp. 1983) as to whether possession of marijuana is a felony or a misdemeanor. We have refused to construe this statute several times because the issue was not considered preserved for appeal. When construction of a statute is holding up a large number of cases like this one is, we should construe it at the first opportunity.

My real disagreement is with the court's holding that the evidence was sufficient to sustain a conviction for possession with intent to deliver. The snake in the grass in this case is Jim Vick. It was he who informed the sheriff, who himself was in the midst of a campaign for re-election, that marijuana was in appellant's house. I have no doubt about his reliability on this point because the evidence unmistakably reveals that he was the culprit who placed it there. Several witnesses observed Vick smoking marijuana and even saw him take dishes out of the trunk of his car that appeared to be the same dishes in which the marijuana was found. Vick shared appellant's house except that each maintained his own bedroom. No contraband was found in appellant's bedroom. Several ounces of marijuana were found in the kitchen area which was shared by the two men. The only evidence found in appel-

lant's bedroom was an article or two about growing marijuana. He may have been curious about how such plants are grown but the evidence lends no credence to a charge of possession. A lustful thought in a man's mind will not support a charge of rape. Neither will reading about marijuana support a possession charge.

Two "roaches" were found in the bathroom but Vick may well have planted them there. This evidence might be incriminating of each occupant of the house and of each recent visitor to either Vick or appellant. The officers claim to have found a warm glass in the area where appellant was seated when they arrived with the search warrant supported by the now disappeared ungrateful Mr. Vick. I have no idea of how a warm glass points to possession of marijuana for sale. If it in any manner indicates the presence of marijuana, it was obviously for smoking it.

The appellant is a 62 year old farmer with no prior record. There was not even a rumor that he was trafficking in contraband. No one testified he was a dealer or even a user. The crime lab found the marijuana, exhibit 19, to contain 1.2 ounces of marijuana.

With a known user in the house, and the complete absence of direct evidence that appellant ever used, sold, manufactured or dealt in marijuana, I cannot find substantial evidence to support a verdict that appellant was guilty of possession with intent to deliver beyond a reasonable doubt.

I would reverse and dismiss.