Geoffrey Chris LUEKEN *v.* STATE of Arkansas

CA CR 04-428 198 S.W.3d 547

Court of Appeals of Arkansas
Opinion delivered November 17, 2004

*The Jesse Law Firm, P.L.C.*, by: *Mark Alan Jesse*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brent P. Gasper*, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge. Appellant, Geoffrey Lueken, appeals from his conviction by a Pulaski County jury of manufacturing methamphetamine, possession of drug paraphernalia with the intent to manufacture methamphetamine, possession of drug paraphernalia, and maintaining a drug premises. He was sentenced to 120 months' imprisonment in the Arkansas Department of Correction. He has four points on appeal.[1] First, he argues that when all evidence is viewed in the light most favorable to the State, the evidence was insufficient to support his conviction for manufacturing methamphetamine. Second, he argues that when all evidence is viewed in the light most favorable to the State under a joint occupancy/constructive possession argument, the evidence was insufficient to support the conviction for possession of paraphernalia with intent to manufacture methamphetamine. Third, appellant argues that the evidence was insufficient to support his conviction for maintaining a drug premises when the evidence demonstrated that contraband belonged to a joint occupant of the residence who had an equal right to control the premises. Fourth, appellant argues that the trial court erred in refusing to admit a certified copy of the co-defendant's judgment and conviction order, showing he had pled guilty to manufacturing methamphetamine under a reverse Rule 404(b) argument, as such was an exculpatory explanation for the paraphernalia found on the premises. We affirm.

On May 27, 2003, officers of the Little Rock Police Department executed a search warrant at the home of appellant and his roommate, Chris Southall. Upon the officers' arrival at the home, appellant was discovered outside working on a vehicle. Officer Russ Littleton testified that a security pat-down was conducted on appellant, and a cigarette package containing a clear smoking

---

[1] Appellant does not challenge the sufficiency of the evidence as to his conviction of possession of drug paraphernalia.

device with a white residue and a small metal pipe was discovered in his right pants pocket. Appellant was taken into custody.

Officer Ken Blankenship testified that while Officer Littleton stayed outside with appellant, he and other officers made their way into the home. He testified that when he reached the porch of the home a strong chemical odor was detected. Appellant's roommate, Mr. Southall, was in the bathroom, and a woman was on the sofa near the television in the living room. Officer Blankenship searched the area upstairs, which was a loft area, where a computer and paperwork were kept. In the loft area, he found a chopper, used to chop ephedrine tablets, and a propane bottle. Officer Blankenship also was responsible for searching Mr. Southall's vehicle, which was parked outside. A search of his vehicle revealed numerous items of drug paraphernalia, including a pickle jar with a bilayer liquid with a cloudy sediment on the bottom, paper plates, syringes, a drain opener, rust remover, a coffee filter inside a plastic bag containing red sludge, a 200 mm flask with tape around the top, a glass jar, and a glass.

Officer Greg Siegler explained that once the officers entered the home, there was a door straight ahead of them that was closed. He could hear someone inside a bathroom. Officer Siegler knocked on the door and identified himself. He heard the toilet flush. He told the person to come out; however, he heard the toilet flush again. Soon the door opened, Mr. Southall exited the bathroom and was taken into custody. Officer Siegler also testified that the woman who was discovered on the sofa in the living room was also taken into custody. A search of the living room revealed three straws, a glass smoking pipe, and four small plastic bags, which were all found near the coffee table.

The search continued into the kitchen and laundry room area. Officer Blankenship testified that a very strong odor was emanating from the kitchen and laundry room area. When he entered the small laundry room, he noticed boxes that had iodine stains on them. He also noticed staining on the walls as well as rust stains in the area in general. On the laundry room shelves and around the room, he found a gallon can of hexane, a funnel, plastic tubing, a container of salt, and coffee filters. A turkey baster, a jar containing a bilayer liquid, coffee filters, stirring sticks, a fan, a plastic bottle with tubing attached, and rubbing alcohol were also found in the laundry room. In the trash can in the laundry room, tubing with stains on it and tissue paper with stains on it were discovered.

Officer Michael Terry conducted a search of the bathroom and the kitchen. Once Mr. Southall was removed from the bathroom, Officer Terry discovered one small glass container with a small amount of white powder on it. In the kitchen, he found a "baster-type" object, a glass jar with a white powder type residue, a container of Red Devil lye, and a homemade smoking device.

A search of the southwest bedroom, conducted by officer Steve Pledger, revealed several items of drug paraphernalia. He discovered pipes used to ingest or smoke methamphetamine, a watertight bong used to smoke marijuana, and plastic bags with residue. Officer Pledger also testified as to items discovered on the porch of the residence. There he found a can of acetone, a can of toluene, which he testified is a thinner used in the separation of a methamphetamine cook, and a can of Coleman camp fuel.

Chris Harrison of the state crime lab testified that of the fourteen items tested for residue at the lab, seven of them tested positive for methamphetamine. Of the remaining items tested, some of them had chemicals commonly used in the manufacturing process. In his opinion, manufacturing was occurring at the residence. Moreover, on appellant's person, officers found a small plastic packet containing a glass tube with a white residue on it and a small metal pipe. As to the amount of methamphetamine found on appellant, Harrison testified that there was just a small amount of residue. As a result, he did a methanol rinse and did not weigh it.

At the conclusion of the testimony, a jury in Pulaski County Circuit Court convicted appellant of manufacturing methamphetamine, possession of drug paraphernalia with the intent to manufacture methamphetamine, possession of drug paraphernalia, and maintaining a drug premise. This appeal followed.

### Sufficiency of the Evidence

Because each of appellant's first three arguments concerns the sufficiency of the evidence as to three of his convictions, we will address them together. Specifically, appellant argues that when all evidence is viewed in the light most favorable to the State, the evidence was insufficient to support each of his convictions for manufacturing methamphetamine, possession of paraphernalia with intent to manufacture methamphetamine, and maintaining a drug premise.

A motion for directed verdict is a challenge to the sufficiency of the evidence. *Cherry v. State*, 80 Ark. App. 222, 95 S.W.3d 5

(2003). When reviewing the sufficiency of the evidence, this court views the evidence in the light most favorable to the guilty verdict, considers only that evidence supporting the verdict, and affirms if substantial evidence supports the verdict. *Cook v. State*, 350 Ark. 398, 86 S.W.3d 916 (2002). The test for determining sufficiency of the evidence is whether substantial evidence supports the verdict. *Id.* (citing *Hatley v. State*, 68 Ark. App. 209, 5 S.W.3d 86 (1999)). Evidence is substantial when it is forceful enough to compel a conclusion and goes beyond mere speculation or conjecture. *Id.* (citing *Wortham v. State*, 65 Ark. App. 81, 985 S.W.2d 329 (1999)). Circumstantial evidence can be sufficient to sustain a conviction when it excludes every other reasonable hypothesis consistent with innocence. *Mace v. State*, 328 Ark. 536, 539, 944 S.W.3d 830 (1997). The question of whether the circumstantial evidence excludes every hypothesis consistent with innocence is for the jury to decide. *Ross v. State*, 346 Ark. 225, 230, 57 S.W.3d 152, 156 (2001).

Arkansas Code Annotated section 5-64-401(a) (Supp. 2003) states that it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance. "Manufacture" means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis. Ark. Code Ann. § 5-64-101(m) (Repl. 1997). Arkansas Code Annotated section 5-64-403(c)(1)(A)(i) (Supp. 2003) states that:

> It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of subchapters 1-6 of this chapter.

Arkansas Code Annotated section 5-64-402(a)(3) (Repl. 1997) states that:

> It is unlawful for any person knowingly to keep or maintain any store, shop, warehouse, dwelling, building, or other structure or place or premise, which is resorted to by persons for the purpose of using or obtaining these substances or which is used for keeping them in violation of subchapters 1-6 of this chapter.

In his brief, appellant argues that there was insufficient evidence to support his convictions under either a circumstantial case of constructive possession or a circumstantial case of accomplice liability. In *Walley v. State*, 353 Ark. 586, 595-96, 112 S.W.3d 349, 354 (2003), our supreme court stated:

> We recently explained how we conduct an appellate review in connection with a sufficiency-of-the-evidence challenge to possession when two or more personsoccupy the residence where the contraband was found.
>
> > Under our law, it is clear that the State need not prove that the accused physically possessed the contraband in order to sustain a conviction for possession of a controlled substance if the location of the contraband was such that it could be said to be under the dominion and control of the accused, that is, constructively possessed. *Heard v. State*, 316 Ark. 731, 876 S.W.2d 231 (1994); *Crossley v. State*, 304 Ark. 378, 802 S.W.2d 459 (1991). We have further explained:
> >
> > > Constructive possession can be implied when the controlled substance is in the joint control of the accused and another. Joint occupancy, though, is not sufficient in itself to establish possession or joint possession. There must be some additional factor linking the accused to the contraband. The State must show additional facts and circumstances indicating the accused's knowledge and control of the contraband.
> >
> > *Hendrickson v. State*, 316 Ark. 182, 189, 871 S.W.2d 362, 365 (1994) (citations omitted). *See also Jacobs v. State*, 317 Ark. 454, 878 S.W.2d 734 (1994); *Nichols v. State*, 306 Ark. 417, 815 S.W.2d 382 (1991). When seeking to prove constructive possession, the State must establish (1) that the accused exercised care, control, and management over the contraband, and (2) that the accused knew the matter possessed was contraband. *Darrough v. State*, 322 Ark. 251, 908 S.W.2d 325 (1995); *Plotts v. State*, 297 Ark. 66, 759 S.W.2d 793 (1988).
>
> *Darrough v. State*, 330 Ark. 808, 811, 957 S.W.2d 707, 708-09 (1997). *Darrough v. State* is consistent with a long line of cases holding that "it cannot be inferred that one in non-exclusive possession of premises knew of the presence of drugs and had joint control of them unless there were other factors from which the jury can reasonably infer the accused had joint possession and control."

*Ravellette v. State*, 264 Ark. 344, 346, 571 S.W.2d 433, 434 (1978). In *Ravellette*, we held that where marijuana was found in a living room and dining room of a rented house jointly shared, there must be some factor in addition to the joint control of the premises to link the accused with the controlled substance. *Id.*; *see also Hicks v. State*, 327 Ark. 652, 659, 941 S.W.2d 387, 391 (1997); *Pyle v. State* 314 Ark. 165, 862 S.W.2d 823 (1993); *Bailey v. State* 307 Ark. 448, 821 S.W.2d 28 (1991); *Embry v. State*, 302 Ark. 608, 611, 792 S.W.2d 318, 319 (1990); *Plotts v. State*, 297 Ark. 66, 759 S.W.2d 793 (1988); *Westbrook v. State*, 286 Ark. 192, 194 691 S.W.2d 123, 124 (1985); *Osborne v. State*, 278 Ark. 45, 643 S.W.2d 251 (1982).

In this case, it is undisputed that appellant owned the premises where the paraphernalia and contraband were discovered. The jury was presented with testimony from Chris Harrison of the state crime lab that manufacturing was occurring at appellant's residence. Several officers testified in detail as to the numerous items commonly found in a methamphetamine lab that were seized from appellant's home. The items were found throughout various common areas of the residence including the bathroom, the loft area, the living room, the kitchen, the laundry area, and a bedroom. Some of the items included: a pill chopper, a propane bottle, a small glass container with an unknown powder on it, red devil lye, a homemade smoking device, a glass jar with a white powdery residue, a glass tube with residue, two straws with residue, plastic tubing, a funnel, coffee filters, a bottle of hexane, a turkey baster, a jar containing a bi-layer liquid, a plastic bottle with tubing that contained cat litter, pipes for ingesting methamphetamine, a watertight bong, plastic bags with residue, a can of acetone, a can of toluene, and a can of Coleman camp fuel.

Officer Blankenship testified that tubing with stains on it as well as tissue paper with stains on it were found in the laundry-room trash can. Officer Blankenship also testified that when the officers approached the porch, they could smell the intense chemical odor connected to the manufacturing of methamphetamine and that the odor was also present near the rear of the home by the kitchen and laundry room. Further, Officer Blankenship's testimony showed that in the laundry room there were iodine stains on the boxes, staining on the walls, and rust stains in the area in general. Seven of the items found at appellant's residence tested positive for methamphetamine. Of the remaining items tested, some of them had chemicals commonly used in the manufacturing process. Moreover, on appellant's person, officers found a small

plastic packet containing a glass bubbled tube with a white residue on it and a small metal pipe that tested positive for methamphet-imine.

 The fact that the drugs were found in common areas of the residence has been considered a linking factor to establish constructive possession. *See Sweat v. State,* 25 Ark. App. 60, 752 S.W.2d 49 (1988). In *Sweat,* the court found sufficient linking factors to support a finding that appellant was in constructive possession of marijuana found in his mother's home. *Id.* Sweat also lived there, was present when the search was conducted, and marijuana was found in common areas of the house, in the refrigerator and on top of the freezer. *Id.* at 65-66, 752 S.W.2d at 50-51. Drug paraphernalia was also found on the kitchen table. *Id.* at 65-66, 752 S.W.2d at 51. In the present case, we find that the jury could reasonably conclude that appellant knew of the exist-ence of the drugs and drug- manufacturing paraphernalia found at his residence.

In cases where the theory of accomplice liability is impli-cated, we affirm a sufficiency-of-the-evidence challenge if sub-stantial evidence exists that the defendant acted as an accomplice in the commission of the alleged offense. *Cook v. State,* 350 Ark. 398, 86 S.W.3d 916 (2002). Arkansas Code Annotated section 5-2-403 (Repl.1997), provides the statutory definition of an accomplice:

> (a) A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, he:
>
> (1) Solicits, advises, encourages, or coerces the other person to commit it; or
>
> (2) Aids, agrees to aid, or attempts to aid the other person in planning or committing it; or
>
> (3) Having a legal duty to prevent the commission of the offense, fails to make proper effort to do so.
>
> (b) When causing a particular result is an element of an offense, a person is an accomplice in the commission of that offense if, acting with respect to that result with the kind of culpability sufficient for the commission of the offense, he:
>
> (1) Solicits, advises, encourages, or coerces the other person to engage in the conduct causing the result; or

(2) Aids, agrees to aid, or attempts to aid the other person in planning or engaging in the conduct causing the result; or

(3) Having a legal duty to prevent the conduct causing the result, fails to make proper effort to do so.

The relevant factors in determining the connection of an accomplice to a crime are the presence of the accused in proximity of a crime, the opportunity to commit the crime, and an association with a person involved in a manner suggestive of joint participation. *Clem v. State,* 351 Ark. 112, 90 S.W.3d 428 (2002). A defendant is an accomplice so long as the defendant renders the requisite aid or encouragement. *Atkinson v. State,* 347 Ark. 336, 64 S.W.3d 259 (2002).

■ Given the evidence that appellant owned the premises, that drugs and paraphernalia were found in common areas throughout the residence, and that methamphetamine and paraphernalia were found in appellant's pocket, we conclude that there was sufficient evidence whereby a jury could convict appellant of all three crimes. Accordingly, the trial court properly denied appellant's motion for a directed verdict.

### *Reverse Rule 404(b)*

Finally, appellant argues that the trial court erred in refusing to admit a certified copy of the co-defendant's judgment and disposition order, showing he pled guilty to manufacturing methamphetamine under a reverse Rule 404(b) argument, as such was an exculpatory explanation for the paraphernalia found on the premises. It is often recognized that evidence such as other parties' threats to kill or offer of payment to someone else to commit murder are relevant to prove motive on the part of someone other than the defendant. *Larimore v. State,* 317 Ark. 111, 877 S.W.2d 570 (1994) (*citing Smith v. State,* 33 Ark. App. 37, 41, 801 S.W.2d 655, 658 (1990)). Such evidence is sometimes called "reverse 404(b)," as it is evidence of other crimes, wrongs, or acts by a party other than the defendant which may not be admitted to show that the party acted in conformity with a known character trait, but which may be admitted for other purposes, such as to show motive, opportunity, intent, or identification of that other party, thus tending to negate the guilt of the defendant. *Id.* (*citing United States v. Stevens,* 935 F.2d 1380, 401-02 (3d Cir. 1991)).

In the present case, appellant attempted to admit a certified copy of Chris Southhall's judgment and disposition order. Appel-

lant was attempting to provide an exculpatory explanation for the presence and discovery of the various items found at the scene. He asserted that the introduction of Southhall's judgment and conviction order would have demonstrated motive, opportunity, and intent.

Evidence offered under Rule 404(b) of the Arkansas Rules of Evidence must be independently relevant, thus, having a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Williams v. State*, 343 Ark. 591, 36 S.W.3d 324 (2001) (citing *McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999)). Even if the evidence is relevant, it may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Ark. R. Evid. 403. The admission or rejection of evidence under Rule 404(b) is committed to the sound discretion of the trial court, which this court will not disturb on appeal absent a showing of manifest abuse. *Warren v. State*, 59 Ark. App. 155, 954 S.W.2d 298 (1997). The standard of review is similar for both relevancy determinations and the decision to admit evidence by balancing the probative value against unfair prejudice or confusion of the issues. *See Walker v. State*, 301 Ark. 218, 783 S.W.2d 44 (1990); *Bennett v. State*, 297 Ark. 115, 759 S.W.2d 799 (1988).

We find that the trial court did not err in refusing to admit the judgment and disposition order. Contrary to appellant's assertion, the order itself does not provide any information as to motive, opportunity, or intent. Accordingly, we find no abuse of discretion on the part of the trial judge in refusing to admit Southall's judgment and disposition order.

Based on the foregoing, we affirm appellant's convictions.

GRIFFEN and CRABTREE, JJ., agree.