SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR–14–617

| | | |
|---|---|---|
| ERIC MATLOCK | | **Opinion Delivered** February 4, 2015 |
| | APPELLANT | |
| V. | | APPEAL FROM THE DALLAS COUNTY CIRCUIT COURT [NO.CR–2013–10–04] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE ROBIN J. CARROLL, JUDGE |
| | | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant appeals from his conviction by jury trial of possession of paraphernalia with intent to deliver, a Class B felony; maintaining a drug premises, a Class C felony; and possession of a controlled substance-crack cocaine, a Class D felony. On appeal, appellant argues that the circuit court erred in (1) denying his motion for directed verdict on each of the three charges he was convicted of, and (2) running his sentences consecutively. We affirm.

Darrell Spells, then director of the Thirteenth Judicial District Drug Task Force in Dallas County, Arkansas, developed information that appellant was selling narcotics in Fordyce, Arkansas. Acting on this information, Officer Spells engaged an informant to make a controlled buy from appellant.[1] Officer Spells and the informant met on the night

---

[1]The plan also included a controlled buy from another suspected drug dealer. While the controlled but was attempted on the other suspected drug dealer, he was not home. This attempt is also on the recording from that evening, which was played in open court.

of November 26, 2012. Officer Spells had the informant empty her pockets to ensure she had no other money or drugs on her. No further search was completed. Officer Spells gave her sixty dollars to make the purchase and a cell-phone-appearing device to record audio and video.

At approximately 7:00 p.m., Officer Spells drove the informant near 616 East 10th Street where Officer Spells had information appellant lived. The informant exited Officer Spells's vehicle and walked in the direction of 616 East 10th Street. Officer Spells had no visual of the informant once she left the vehicle. She returned approximately ten minutes later with what appeared to be crack cocaine. Based on this evidence, Officer Spells obtained a search warrant for the residence located at 616 East 10th Street and for appellant. The same was executed on January 14, 2013. No one was in the home at the time of execution. Appellant surrendered himself to police on January 15, 2013.

During the search, Officer Spells seized two sets of digital scales, some Glad sandwich bags, two pieces of mail addressed to appellant at a neighboring address, and a piece of paper appearing to have a handwritten ledger on it. One of the scales had a white powdery substance on it that appeared to be crack cocaine.[2] Officer Spells scraped off the residue and put it in an envelope for testing. Testing of the substance received from the informant during the controlled buy and of the substance scraped off the scale revealed that the former was .5237 grams of cocaine and the latter was .0225 grams of cocaine.

On March 14, 2013, the State filed a three-count felony information charging appellant with delivery of fewer than two grams of cocaine, possession of drug

---

[2]The second scale had a grassy substance on it, but the substance was not tested.

paraphernalia for the purpose of manufacturing cocaine, and maintaining a drug premises. The State amended the information on October 18, 2013, to add habitual-offender charges to each of the three counts charged in the March 14, 2013 information. A second amended information was filed on February 5, 2014, adding a count of possession of fewer than two grams of cocaine.[3]

At the conclusion of the trial, the jury found appellant not guilty of the charge of delivery of fewer than two grams of cocaine. However, the jury found appellant guilty of possession of drug paraphernalia for the purpose of manufacturing cocaine, maintaining a drug premises, and possession of fewer than two grams of cocaine. The jury recommended a sentence of ten years' imprisonment for each offense, but did not make a recommendation on whether the sentences should be served concurrently or consecutively. The circuit court ordered that the sentences be served consecutively for a total of thirty years' imprisonment. A sentencing order reflecting the same was entered on February 28, 2014. This timely appeal followed.

## I.     *Directed Verdict*

A motion for directed verdict is a challenge to the sufficiency of the evidence.[4] When reviewing the sufficiency of the evidence, this court views the evidence in the light most favorable to the guilty verdict, considers only that evidence supporting the verdict,

---

[3]The State orally amended the information at the beginning of the February 10, 2014, trial to change the amount of the fine associated with possession-of-drug-paraphernalia-for-the-purpose-of-manufacturing-cocaine count from $10,000 to $15,000.

[4]*Ashley v. State*, 2012 Ark. App. 131, at 6, 388 S.W.3d 914, 919 (citing *Lueken v. State*, 88 Ark. App. 323, 198 S.W.3d 547 (2004)).

and affirms if substantial evidence supports the verdict.[5] Evidence is substantial when it is forceful enough to compel a conclusion and goes beyond mere speculation or conjecture.[6] Circumstantial evidence can be sufficient to sustain a conviction when it excludes every other reasonable hypothesis consistent with innocence.[7] The question of whether the circumstantial evidence excludes every hypothesis consistent with innocence is for the jury to decide.[8]

We have held that the credibility of witnesses is a matter for the jury's consideration.[9] Where the testimony is conflicting, we do not pass upon the credibility of the witnesses and have no right to disregard the testimony of any witness after the jury has given it full credence, where it cannot be said with assurance that it was inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon.[10]

A. Possession of Drug Paraphernalia with Purpose of Manufacturing

Appellant first argues that the circuit court erred in failing to direct a verdict in his favor on the charge of possession of drug paraphernalia for the purpose of manufacturing

---

[5]*Id.*

[6]*Id.*

[7]*Id.*

[8]*Id.*

[9]*Williams v. State*, 2011 Ark. 432, at 4, 385 S.W.3d 157, 160 (citing *Tryon v. State*, 371 Ark. 25, 263 S.W.3d 475 (2007)).

[10]*Id.* (citing *Davenport v. State*, 373 Ark. 71, 281 S.W.3d 268 (2008)).

SLIP OPINION

cocaine. Appellant specifically argues that because he did not live in the home from which the drug paraphernalia was seized, and the same was not seized from a place immediately and exclusively accessible and subject to his control, the State failed to prove that he actually or constructively possessed any of the items seized from the home, and the circuit court should have granted his motion for directed verdict.

Arkansas Code Annotated section 5-64-443(b) states that "[a] person who uses or possesses with the purpose to use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, or conceal a controlled substance that is methamphetamine or cocaine upon conviction is guilty of a Class B felony."[11] It is not necessary for the State to prove literal physical possession of drugs in order to prove possession, constructive possession—control of or right to control the contraband—is sufficient.[12] To prove constructive possession, the State must establish that appellant exercised care, control, and management over the drug paraphernalia.[13] Constructive possession may be established by circumstantial evidence.[14]

Appellant's argument relies a great deal on his assertion that he did not live in the house. He testified that he did not live in the home at 616 East 10th Street in which the

---

[11](Supp. 2013).

[12]*Bustillos v. State*, 2012 Ark. App. 654, at 5, 425 S.W.3d 44, 47 (citing *Mack v. State*, 2010 Ark. App. 514).

[13]*Duggar v. State*, 2013 Ark. App. 135, at 3, 427 S.W.3d 77, at 80 (citing *McKenzie v. State*, 362 Ark. 257, 262–63, 208 S.W.3d 173, 175 (2005)).

[14]*Id.*

search warrant was executed, but that he lived in a nearby trailer with his grandmother at 622 East 10th Street. His girlfriend, Shambreka Broughton, testified that she lived in the 616 East 10th Street property alone with her four-year-old daughter by appellant. She agreed that appellant lived with his grandmother.

Appellant received his mail at his grandmother's address—622 East 10th Street. However, appellant testified that despite not living at the 616 East 10th Street property, "[w]hen he get [sic] around Shambreka's house, okay, my cousin call [sic] me and say [sic] you got [sic] mail" because he did not check the mail at his grandmother's house. He testified that his cousin would "bring me my mail around [Broughton's house.]" Broughton also testified that appellant's cousin would bring appellant's mail to him at her home. Furthermore, appellant parked at least one of his vehicles at the 616 East 10th Street property. And finally, the confidential informant testified that she had purchased drugs from appellant prior to the controlled buy and that appellant entered the 616 East 10th Street property to obtain the drugs she had purchased from appellant during the controlled buy. The fact-finder is free to believe all or part of a witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence.[15] The fact-finder could have reasonably concluded that appellant lived at the 616 East 10th Street property with his girlfriend and not the 622 East 10th Street property as he asserted.

---

[15]*Dishman v. State*, 2011 Ark. App. 437, at 7, 384 S.W.3d 590, 594 (citing *Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006)).

Where there is joint occupancy of the premises where contraband is found, some additional factor must be present linking the accused to the contraband.[16] In such cases, the State must prove two elements: (1) that the accused exercised care, control, or management over the contraband, and (2) that the accused knew the matter possessed was contraband.[17] This control and knowledge can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, and the ownership of the property where the contraband is found.[18]

Broughton testified that she was "not aware" that appellant might have been selling drugs out of her home; did not know any of the names listed on the makeshift ledger found near the scales; did "not ever" buy fold-top bags, as she only bought Ziploc bags and did not know of any reason why the fold top bags were in her house; and never looked inside the drug-paraphernalia-containing cabinets. She also testified that she lived alone with her daughter in the home. Appellant then testified that "I know without a doubt in my mind [the drug paraphernalia] ain't [Broughton's] and I know they ain't mine." Otherwise, he testified that he did not know who had been there. Additionally, where Broughton knew none of the names on the ledger, although he denied knowing all of the names, appellant admitted knowing at least some of the names on the ledger. And

---

[16]*Carter v. State*, 2010 Ark. 293, at 6, 367 S.W.3d 544, 548 (citing *Morgan v. State*, 2009 Ark. 257, 308 S.W.3d 147).

[17]*Id.*

[18]*Id.*

again, the confidential informant testified that appellant had gone into Broughton's house to obtain the drugs she purchased from him in the controlled buy.

As such, the testimony showed that Broughton did not know anything—and appellant agreed—about the drug paraphernalia or about any drug-dealing. Accordingly, where the testimony was that only appellant and Broughton were in the home, and both appellant and Broughton agree that Broughton was not involved in drugs, the jury could reasonably infer that as the only other adult in the home, appellant exercised control over the contraband and knew that it was contraband. We find no error.

Appellant's second argument, in the alternative, is that even if the State proved appellant constructively possessed the seized items, the State failed to prove the seized items were drug paraphernalia. The State asserts that this argument is not preserved as to whether the State proved that the sheet of paper containing what appeared to be a ledger of some sort was drug paraphernalia. We agree. Failure to present a specific argument in a directed-verdict motion will constitute a failure to abide by Rule 33.1, resulting in a failure to preserve the issue for appellate review.[19] Appellant's motion for directed verdict below specifically addressed the digital scales and the baggies, but not the sheet of paper. Accordingly, we address the argument only with regard to the digital scales and the baggies.

There was testimony from the confidential informant that appellant entered the 616 East 10th Street property to retrieve $60 worth of crack during the controlled buy. During

---

[19]*Bradley v. State*, 2013 Ark. 58, at 12, 426 S.W.3d 363, 370 (citing Ark. R. Crim. P. 33.1(c) (2012)).

SLIP OPINION

execution of the search warrant, two sets of digital scales were seized along with baggies. Officer Spells, who initiated the controlled buy and helped execute the search warrant, testified that he had gathered information that appellant was dealing drugs prior to the controlled buy and that he knew where appellant lived. He testified, based on his five years of experience with the Thirteenth Drug Task Force, that the baggies were "consistent with packaging drugs" and that digital scales were often used to weigh narcotics like crack cocaine "because a lot of times you are dealing with such small amounts." He said drug dealers needed an accurate reading to determine how much to charge for their narcotics.

As for there being two scales—one with a white powdery substance on it and one with a grassy substance on it—Officer Spells testified that dealers who sell different narcotics often use different scales for each narcotic "because they do not want to cross contaminate each one." The white powdery substance on the one scale was tested and identified as cocaine. The baggies were found in the same cabinet as the scales. Broughton testified that there was no reason for the baggies to be in her house because she did not purchase fold-down baggies. The jury could reasonably conclude that the scales and baggies were used for weighing and packaging cocaine. We oldd that there was substantial evidence to support appellant's conviction of possession of drug paraphernalia. The circuit court did not err in denying appellant's motion for directed verdict as to this charge.

### B. Maintaining a Drug Premises

Appellant's second argument is that the circuit court should have entered a directed verdict in favor of appellant on the charge of maintaining a drug premises because the



State failed to prove that he actually or constructively possessed Broughton's home or had a superior or equal right to it. We disagree.

Arkansas Code Annotated section 5-64-402(a)(2) provides,

(a) It is unlawful for any person:
. . .
(2) Knowingly to keep or maintain any store, shop, warehouse, dwelling, building, or other structure or place or premise that is resorted to by a person for the purpose of using or obtaining a controlled substance in violation of this chapter or that is used for keeping a controlled substance in violation of this chapter.

The same analysis previously applied to appellant's first argument applies here. There was sufficient testimony and evidence from which a jury could reasonably conclude that appellant lived with Broughton, not his grandmother. Likewise, there was sufficient evidence from which a jury could reasonably conclude that appellant was maintaining a drug premises in Broughton's house where he was the only other adult in the home and both he and Broughton agreed that she was not involved in drug-dealing. The trier of fact "may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the State's account of the facts rather than the defendant's"; we will not second guess these determinations.[20] The circuit court did not err in failing to direct a verdict in appellant's favor on this charge.

## C. Possession of a Controlled Substance

Appellant's third argument is that the circuit court should have entered a directed verdict in his favor on the charge of possessing a controlled substance. He specifically argues that the State failed to prove this charge because Officer Spells failed to witness the

---

[20]*Holloway v. State*, 2010 Ark. App. 767, at 3, 379 S.W.3d 696, 699 (citing *Barrett v. State*, 354 Ark. 187, 195, 119 S.W.3d 485, 490 (2003)).



controlled buy and the recording device failed to record the buy or his voice in any exchange with the informant.

Arkansas Code Annotated section 5-64-419(a) provides that it is unlawful for a person to possess a controlled substance. Arkansas Code Annotated section 5-64-419(b)(1)(A) states:

> (b) A person who violates this section with respect to:
> (1) A Schedule I or Schedule II controlled substance that is methamphetamine or cocaine with an aggregate weight, including an adulterant or diluent, of:
> (A) Less than two grams (2g) upon conviction is guilty of a Class D felony[.]

Appellant cites *Slater v. State*, in support of his argument that because Officer Spells did not witness the transaction between appellant and the informant, and the audio/video surveillance failed to record any drug transaction, his possession conviction should be reversed.[21] In *Slater*, we held that the evidence was insufficient to support the defendant's conviction for delivery of cocaine. This case is distinguishable. While Officer Spells did not see the transaction, and it is unclear whether the audio/video evidences an exchange between the informant and appellant, unlike in *Slater*, the informant did testify in this matter. The fact that the informant testified makes this an issue of credibility. The jury is responsible for determining the weight and credibility of evidence.[22] The informant's testimony, in addition to appellant's own testimony admitting to multiple convictions for drug-related crimes, when paired with the fact that the white powdery substance returned to Officer Spells by the informant was in fact .5237 grams of cocaine, were of sufficient

---

[21]2011 Ark. App. 213, 382 S.W.3d 771.

[22]*Woods v. State*, 2013 Ark. App. 739, at 5, 431 S.W.3d 343, 347 (citing *Richey v. State*, 2013 Ark. App. 382).



force to compel the jury's conclusion that appellant possessed cocaine without resorting to speculation or conjecture. The circuit court did not err.

## II. *Consecutive Sentencing*

Appellant's final argument is that the trial court abused its discretion in ordering appellant's sentences to run consecutively rather than concurrently. He asserts that the circuit court did so because it found appellant to be "obnoxious." We disagree.

Arkansas Code Annotated section 5-4-403(a) provides, "When multiple sentences of imprisonment are imposed on a defendant convicted of more than one (1) offense, ... the sentences shall run concurrently unless, upon recommendation of the jury or the court's own motion, the court orders the sentences to run consecutively."[23] Whether sentences should be run consecutively or concurrently is within the sole discretion of the trial court, and exercise of that discretion will not be reversed on appeal unless there is an abuse of that discretion; it is a heavy burden to prove that a trial court did not exercise its discretion in determining whether to run sentences consecutively.[24] There is no requirement that the court explain its reason for running sentences consecutively.[25]

---

[23](Repl. 2013).

[24]*Wallis v. State*, 2010 Ark. App. 238, at 10, 374 S.W.3d 737, 742 (citing *Throneberry v. State*, 2009 Ark. 507, 342 S.W.3d 269).

[25]*Throneberry v. State*, 2009 Ark. 507, at 7–8, 342 S.W.3d 269, 272 (citing *Pyle v. State*, 340 Ark. at 61, 8 S.W.3d at 496; *Smallwood v. State*, 326 Ark. 813, 935 S.W.2d 530 (1996); *Moore v. State*, 299 Ark. 532, 773 S.W.2d 834 (1989) (no abuse of discretion where the trial court gave no reason for running sentences consecutively other than "the evidence")).

SLIP OPINION

In announcing that appellant's sentence would run consecutively, the court stated simply that appellant's "three sentences are to be run consecutively." No further explanation was given. Appellant's argument that the court ordered consecutive sentences due to appellant's attitude is pure speculation. Accordingly, there is no evidence that the court abused its discretion.

Affirmed.

GRUBER and GLOVER, JJ., agree.

*Morris Law Firm, P.A.*, by: *Jimmy C. Morris, Jr.*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Ashley Priest*, Ass't Att'y Gen., for appellee.