Cite as 2022 Ark. App. 110

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-21-367

| | | |
|---|---|---|
| | | Opinion Delivered March 2, 2022 |
| JOSEPH ALLEN | | |
| | APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT |
| V. | | [NO. 66FCR-20-197] |
| STATE OF ARKANSAS | | HONORABLE GUNNER R. DELAY, |
| | APPELLEE | JUDGE |
| | | AFFIRMED |

**MIKE MURPHY, Judge**

Joseph Allen was found guilty by a Sebastian County jury of theft by receiving and possession of drug paraphernalia. He now appeals. On appeal, Allen argues that substantial evidence does not support the charges. We affirm.

On February 26, 2020, Arkansas State Police Trooper Rafael Guerra pulled behind the car appellant Joseph Allen was driving, checked its tags, and discovered it had been reported stolen. Guerra verified with dispatch it was stolen, called for backup, and then initiated a traffic stop. He told Allen he was being arrested for theft by receiving; Allen said he was borrowing the car from a friend who lived down the street. During the search of the car, officers found under the driver's seat a loaded 9mm semiautomatic gun and almost two pounds of meth. The meth was divided between two plastic bags that were inside a donut bag next to the gun. Allen was taken to jail.

Allen made two calls from jail. One was to his girlfriend, Vanessa Davidson, and the other was to his mother. The State introduced a transcript of the jail calls, and they were played to the jury. The pertinent excerpts follow. First, while talking to Davidson, the following conversation took place:

ALLEN: Now, the only that looks good for me is that I didn't steal the fucking car and I didn't know the bitch was stolen . . . and you know the little bitch I borrowed the car from is in here, huh? . . . He's lucky I ain't threw his ass off the top balcony yet. I'm not playing.

DAVIDSON: How are you saying that right now?

ALLEN: Cause the little bitch lied to me and told me the motherfucker wasn't reported.

DAVIDSON: He told you what the fuck he thought.

ALLEN: No, he told me y'all just checked everything.

DAVIDSON: Well, he did check it and I seen it myself. It didn't come up as stolen because that doesn't mean it didn't happen five minutes later, shit. Right? I mean, I was sitting right there when he checked it. . . .

ALLEN: And I asked him whenever he got to the house, I was like is it fucking hot? He was like no, no, no, it ain't hot. I said, You sure? Yeah, yeah, yeah, yeah, but the cop said the bitch had been reported stolen all day.

DAVIDSON: Well, like I said, I was sitting right there when he looked it up. There is no way in hell I would tell you otherwise.

ALLEN: Right. Well, I'm done. I borrowed the fucking car to go across town with and I didn't know anything was in the motherfucker and I don't know who the fuck was what . . .why would I have pulled over? . . . I figure I'm gonna do twenty-five years. . . . It was damn near two elbows in the car plus two fucking guns. And a hot car. . . .And that MAC was behind the seat along with the bag. I didn't know either one of them was back there. So, why would I have pulled over?

2

. . . .

DAVIDSON: I told you not to do this shit. Pisses me the fuck off.

. . . .

ALLEN: I wish I hadn't been in that fucking car. If I'd just go get a job. . . . I really didn't think that car was hot or I wouldn't have fucking, I would've burned off on it. I thought the bitch had me on a fucking blinker or something.

Next, while speaking to his mother, the following conversation took place:

ALLEN: You hear me? Vanessa ain't do nothing but try to talk me down from the dumb shit and has been, so don't be mad at her. She didn't want me . . . doing none of that. All she wanted me to do was go get a job and go to work . . . that's what me and her kept fighting about 'cause I wouldn't go get a job, so this ain't on her, I promise you, so be nice to her, please . . . she been trying to get me to act right, so you can't hold that against her.

MOTHER: Yeah. You got to get completely away from all of it, okay?

ALLEN: I know that. I know. Why do you think I was doing it, momma? Why do you think I was doing what I was doing? So I could get the fuck up out of here . . . this was my last move. This was my last trick. . . . This was going to put me . . . out of the fucking dumb shit back into fucking the real world . . . and I just borrowed the fucking car for like I don't know, twenty minutes, and I asked the motherfucker before I took it if it was hot or if it was straight and they said it was straight. Then come out and it wasn't fucking straight. It was hot as a motherfucking firecracker.

MOTHER: And how much drugs did you have on you?

ALLEN: Well, I don't know, what they found in the car was a fucking shit ton . . . but I didn't know that was in there and then they had a mac- a mac-11 in there that I didn't know about. I had my Glock on me, but I had my concealed carry permit for that one. . . like I told that fucking cop, he said yaddy yadda this and that and I said bitch, if you think if I knew that this fucking car was stolen and there was all that dope behind the seat and a MAC-11 back there, you think I'd stopped? . . . like I pulled over like everything was okay.

3

Allen was charged with four counts: (1) trafficking methamphetamine; (2) simultaneous possession of drugs and firearms; (3) theft by receiving; and (4) possession of drug paraphernalia. A jury convicted Allen of theft by receiving and possession of drug paraphernalia, but a mistrial was granted on the charges of trafficking methamphetamine and simultaneous possession because the jury could not reach a verdict. Allen was sentenced to three years' imprisonment for theft by receiving and six years' imprisonment for possession of drug paraphernalia, to be served consecutively. On appeal, Allen claims that there is not substantial evidence to support either of his convictions.

The denial of a directed-verdict motion is treated on appeal as a challenge to the sufficiency of the evidence. *Price v. State*, 2019 Ark. 323, at 4, 588 S.W.3d 1, 4. When assessing a challenge to the sufficiency of the evidence, we determine whether the verdict is supported by substantial evidence. *Id.* The evidence is viewed in the light most favorable to the State, and we only consider the evidence that supports the verdict. *Kinsey v. State*, 2016 Ark. 393, at 5, 503 S.W.3d 772, 775. Evidence is substantial when it is leads the fact-finder to a conclusion without speculation or conjecture. *Hinton v. State*, 2015 Ark. 479, at 2, 477 S.W.3d 517, 520. Circumstantial evidence may support the conviction, but it must be inconsistent with any other reasonable hypothesis of innocence. *Price*, 2019 Ark. 323, at 6, 588 S.W.3d at 5. Whether the evidence excludes all other reasonable hypotheses that show innocence is a decision for the jury. *Id.* The jury is responsible for determining witness credibility and resolving any inconstancies in the evidence. *Id.*

## I. *Theft by Receiving*

A person commits theft by receiving when he or she receives, retains, or disposes of stolen property of another person, either knowing or having good reason to believe the property was stolen. Ark. Code Ann. § 5-36-106(a) (Repl. 2013). "Receiving" means acquiring possession, control, or title or lending on the security of the property. Ark. Code Ann. § 5-36-106(b). A presumption that a person knows or believes property was stolen arises when there is unexplained possession or control by the person of recently stolen property. Ark. Code Ann. § 5-36-106(c)(1). Theft by receiving is a Class D felony if the value of the property is $5000 or less but more than $1000. Ark. Code Ann. § 5-36-106(e)(3)(A).

Allen argues that the State did not present sufficient evidence to establish that he knew or had reason to believe the property was stolen. He says his "perfectly reasonable explanation" was that he was borrowing it from a friend. While the intent to commit a crime can rarely be proved by direct evidence, it can be inferred from the circumstances of the crime. *McCray v. State*, 2020 Ark. 172, at 5, 598 S.W.3d 509, 512. Jurors can draw upon their common knowledge and experience to infer intent from the circumstances. *Id.* Allen points to the fact that in the recordings, he insists the car was borrowed, he asked and made sure it *was not* stolen before borrowing it, and that he would not have pulled over if he thought the car was "hot."

Allen would not say from whom he borrowed the car, but it was from someone he at least felt the need to ask if the car was stolen before driving it. That, in and of itself, indicates that Allen had good reason to believe it was stolen. Further, Allen and Davidson's dialogue

indicates they were not so much concerned if the car was stolen but if it was *reported* stolen. This is sufficient for the jury to infer intent from the circumstances. Thus, the theft-by-receiving charge was supported by substantial evidence.

II. *Possession of Drug Paraphernalia*

A person commits possession of drug paraphernalia when he possesses material of any kind used for storing, containing, or concealing a controlled substance, such as methamphetamine. Ark. Code Ann. § 5-64-443(c) (Supp. 2021); Ark. Code Ann. 5-64-101(12) (Supp. 2021). Constructive possession is sufficient to establish possession for the purpose of this statute. *Matlock v. State*, 2015 Ark. App. 65, 454 S.W.3d 776. To prove constructive possession, the State must establish that the appellant exercised care, control, and management over the drug paraphernalia. Here, Allen was alone in a car with bags of drugs under his seat. This is sufficient. *Polk v. State*, 348 Ark. 446, 453, 73 S.W.3d 609, 614 (2002) ("[C]onstructive possession may be implied where the contraband is found in a place immediately and exclusively accessible to the accused and subject to his control.").

Citing *Morgan v. State*, 2009 Ark. 257, 308 S.W.3d 147, Allen argues that there must be other factors linking him to the contraband beyond having been in the car with the contraband under his seat. *Morgan* is inapplicable because it concerned a joint-occupancy issue. Instead, in *Polk, supra*, the supreme court held that when a single occupant is in a borrowed car or a car owned by another, he is not afforded the benefit of the increased inquiry afforded those in joint-occupancy situations.

Allen further argues that the jury's conclusion that he possessed paraphernalia but not the actual drugs defies common sense and demonstrates that they resorted to suspicion and conjecture in reaching conclusions that were mutually exclusive. The jury, however, did not find Allen not guilty on the other two charges; instead, they were unable to reach a verdict on the other two charges. To the extent Allen suggests this is an inconsistent verdict, he did not move for a mistrial on this basis. Further, it is well settled that a defendant may not base an attack of his conviction on inconsistency. *Mercouri v. State*, 2016 Ark. 37, 480 S.W.3d 864. "A jury may convict on some counts but not on others and may convict in different degrees on some counts because of compassion or compromise and not solely because there was insufficient evidence of guilt." *Jordan v. State*, 323 Ark. 628, 631, 917 S.W.2d 164, 165 (1996). The jury is free to exercise its historic power of lenity if it believes that a conviction on one count would provide sufficient punishment. *McVay v. State*, 312 Ark. 73, 847 S.W.2d 28 (1993).

We affirm.

WHITEAKER and HIXSON, JJ., agree.

*Ogles Law Firm, P.A.*, by: *John Ogles*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.