Cite as 2026 Ark. App. 69

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CR-25-60

| | |
|---|---|
| JASMINE LEIGH CHAMBERS<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered February 4, 2026<br><br>APPEAL FROM THE DREW COUNTY CIRCUIT COURT<br>[NO. 22CR-23-54]<br><br>HONORABLE ROBERT B. GIBSON III, JUDGE<br><br>AFFIRMED |

**WENDY SCHOLTENS WOOD, Judge**

Jasmine Chambers appeals the sentencing order entered by the Drew County Circuit Court convicting her, as an accomplice, of possession of methamphetamine with purpose to deliver and sentencing her to fifteen years' imprisonment. Her sole point on appeal is that the evidence is insufficient to support her conviction. We affirm.

The State presented testimony from three witnesses. The first witness, Officer David Menotti of the Monticello Police Department, said that on March 23, 2023, he responded to a call from Atwoods regarding a suspicious male in the store who was potentially shoplifting and a female who was "passed out" in the driver's seat of the suspect's car. On investigation, Officer Menotti determined that the female, Chambers, was not passed out but asleep and that there were several active arrest warrants pending for the shoplifting suspect, Jonathan McWilliams. He said that when McWilliams left the store and got into the

passenger seat of the car, he and Agent James Slaughter approached the car, asked McWilliams to step out, and arrested him on the outstanding warrants. In connection with the arrest, they searched McWilliams and the car.

In McWilliams's pocket, they discovered Ziploc bags containing several different controlled substances, an unlabeled bottle containing over four grams of methamphetamine, and a pipe. After they searched McWilliams, Officer Menotti told Chambers that they were going to search the entire vehicle, which they learned was owned by Chambers, and asked her if there was anything illegal in the car or on her person. Chambers said, "There's nothing on me. I don't know on the vehicle." While conducting the search of the car, Officer Menotti found a contact-lens case in Chambers's purse that contained approximately a half gram of methamphetamine. All of this, from the arrest of McWilliams through the search of Chambers's purse, was captured on Officer Menotti's body camera, and the video was introduced into evidence and played for the jury.

Agent Slaughter then testified that he worked with the Tenth Judicial District Drug Task Force and had certifications including "for methamphetamine training, advanced methamphetamine, undercover, [and] drug recognition expert" and that he had worked as an undercover officer about "a hundred times." He said that he became involved in this case because he received information the night before the Atwoods incident that McWilliams was selling illegal narcotics to people at a local convenience store. Agent Slaughter explained that they found a bottle containing methamphetamine in McWilliams's pocket, a cigarette pack with a clear bag containing methamphetamine and a glass pipe containing residue in

2

the center console of the car, a contact-lens case containing methamphetamine in Chambers's purse, a bag with two containers of marijuana in the trunk, and various bottles containing different types of pills. Agent Slaughter testified that he had learned from his experience and training that a methamphetamine user might purchase between a half gram and a gram of methamphetamine, "which is way more than a useable amount" to use "a couple of times." He said that the amount of methamphetamine found on McWilliams and in Chambers's car is "a lot more than a usable amount for personal use" and is "very consistent with somebody selling it." He also said that the fact that the pills are in a bottle different from the label on the bottle, as was found here, shows the pills were packaged for resale.

Quinton Bryant of the Arkansas State Crime Laboratory testified that the lab does not test all the evidence due to the tremendous backlog of their caseload; rather, the lab tests the items that would support the "highest charge" in the case. Here, he tested the crystalline substance contained in the pill bottle found in McWilliams's pocket and the crystalline substance found in one side of the contact-lens case. Both substances were methamphetamine: 4.6584 grams in the pill bottle and 0.3317 grams in the right side of the contact-lens case. He said that the same type of crystalline substance was found in the center console and weighed 1.3418 grams, and the crystalline substance in the other side of the contact-lens case weighed 0.1697 grams.

For the defense, Chambers testified on her own behalf. She said that she had been friends with McWilliams for a year and a half and had driven him in her car to Monticello

3

two days before the incident at Atwoods for a court appearance the day before. She could not remember the name of the hotel they stayed in but said they stayed in the same room. She said McWilliams wanted to go to Atwoods to get a hat, so she took a nap in the car while she waited on him to shop, which she said took about an hour and a half or two hours. She said that she had driven McWilliams to a dispensary the night before the incident to get marijuana but denied knowing how the methamphetamine, pills, or pipe got in her car or in her contact-lens case. Though she admitted in her direct testimony that the contact-lens case found in her purse was hers, on cross-examination Chambers said she was not sure if that case was hers because she had a few different ones, and her case usually contains solution and contacts.

The jury was instructed that Chambers was charged, as an accomplice, with possession of over two grams of methamphetamine with the purpose to deliver. The jury found her guilty and recommended a sentence of fifteen years' imprisonment. The circuit court entered a sentencing order in accordance with the jury's verdict and sentence recommendation. Chambers filed this appeal challenging the sufficiency of the evidence supporting her conviction.

When reviewing a challenge to the sufficiency of the evidence, we must assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Collins v. State*, 2021 Ark. 35, at 4, 617 S.W.3d 701, 704. We affirm a conviction if substantial evidence exists to support it. *Price v. State*, 2019 Ark. 323, at 4, 588 S.W.3d 1, 4. Substantial evidence is that which is of sufficient force and character that it will, with

reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Id.*, 588 S.W.3d at 4. Witness credibility is an issue for the fact-finder, which may believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *McKisick v. State*, 2022 Ark. App. 426, at 4, 653 S.W.3d 839, 843.

Chambers was convicted of possession of more than two grams of methamphetamine with the purpose to deliver pursuant to Arkansas Code Annotated section 5-64-420(b)(2) (Supp. 2023). The State's theory was that Chambers and McWilliams were accomplices of each other. A person is criminally liable for the conduct of another person when she or he is the accomplice of another person in the commission of an offense. Ark. Code Ann. § 5-2-402(2) (Repl. 2024). A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, the person aids, agrees to aid, or attempts to aid the other person in planning or committing the offense. Ark. Code Ann. § 5-2-403(a)(2) (Repl. 2024). Arkansas law makes no distinction between the criminal liability of a principal and an accomplice. *Winters v. State*, 2013 Ark. 193, at 12, 427 S.W.3d 597, 605.

On appeal, Chambers argues that the evidence does not establish that she actually or constructively possessed the methamphetamine found on McWilliams and in her car. She also argues that the evidence did not demonstrate that she had the purpose to deliver methamphetamine. She points to her testimony that she did not know what was in the car or in McWilliams's pocket or how the methamphetamine got into her contact-lens case. She bolsters this argument by stating that McWilliams did not provide any testimony tying her

5

to the methamphetamine in his pocket. She claims that the only thing that could possibly link her to the incident was the "very small amount of methamphetamine" found in a contact-lens case in her purse and that the only drugs and drug paraphernalia that "could possibly suggest purpose to deliver" were not found in her plain view.

What Chambers does not argue, however, is that the evidence fails to prove that she was McWilliams's accomplice. The State's case against Chambers was based on accomplice liability, and the jury was so instructed. The jury concluded that Chambers possessed methamphetamine with the intent to deliver on the basis of her status as an accomplice. Contraband-possession convictions premised on accomplice liability can stand without proof of constructive possession. *See B.T. v. State*, 2019 Ark. App. 471, at 12, 588 S.W.3d 387, 394–95; *Lueken v. State*, 88 Ark. App. 323, 331, 198 S.W.3d 547, 553 (2004). A person is criminally liable for the conduct of another person when she or he is the accomplice of another person in the commission of an offense. Ark. Code Ann. § 5-2-402(2) (Repl. 2024).

We will not research or develop arguments for a party, and a party's failure to develop his or her own arguments precludes review of the issue on appeal. *Criswell v. State*, 2026 Ark. App. 6, at 5 (citing *Smith v. Heather Manor Care Ctr., Inc.*, 2012 Ark. App. 584, at 7, 424 S.W.3d 368, 375). Accordingly, we affirm Chambers's conviction because she has not presented an argument on appeal controverting her accomplice liability as found by the jury.

Affirmed.

HIXSON and BROWN, JJ., agree.

*Vicki Lucas*, for appellant.

6

*Tim Griffin*, Att'y Gen., by: *A. Evangeline Bacon*, Ass't Att'y Gen., for appellee.